IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-42-FL

| | |
|---|---|
| BRYAN OAKLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| LOUIS DEJOY, Postmaster General, ) | |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court upon defendant's motion for summary judgment (DE 16). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff began this employment discrimination suit by filing complaint in this court January 30, 2023. Plaintiff amended his complaint June 13, 2023, which operative complaint presents a single claim for failure to accommodate under the Rehabilitation Act.[1] Defendant moved for summary judgment July 27, 2023, upon the record developed during pre-suit administrative proceedings. This record includes, and defendant relies upon, 1) selected documents produced by plaintiff and the EEOC in the administrative proceedings; 2) the depositions of two of defendant's employees during these proceedings; 3) documents about plaintiff's various proposed reasonable accommodations; and 4) the EEOC decision rejecting

---

[1] All subsequent references in this order refer to this amended complaint at docket entry (DE) 14.

plaintiff's claims in the administrative proceedings. Plaintiff relies upon the same exhibits, plus plaintiff's declaration.

Plaintiff responded in opposition to the motion, and defendant replied. Plaintiff then moved to amend his briefing in opposition to defendant's motion, which request the court granted December 28, 2023. Plaintiff therefore filed an amended opposition brief and an amended statement of material facts, together with a declaration of counsel under Federal Rule of Civil Procedure 56(d). Defendant filed an amended reply brief and amended statement of material facts.

## STATEMENT OF FACTS

Plaintiff Bryan Oakley began working for the United States Postal Service ("USPS") in 2007. (Pl's Statement Material Facts ("Pl's SMF") (DE 43) ¶ 1).[2] In 2014, plaintiff began treatment for post-traumatic stress disorder ("PTSD") with a psychiatrist. (Id. ¶ 1(b)).

In August 2015, plaintiff began working at the USPS's processing center in Fayetteville, North Carolina. (Id. ¶ 1(c)). Plaintiff was selected to be a supervisor of distribution operations ("SDO"), a managerial position, September 30, 2017. (Id. ¶ 1(d)). This was an executive administrative schedule ("EAS") position. (Id.). As of that date, plaintiff's official position was SDO at either the processing center or its annex, two separate facilities that fell under the "same umbrella" (together the "Fayetteville plant"). (Id. ¶ 1(e)).

In September 2018, mail processing equipment in the annex began to provoke plaintiff's PTSD. (Id. ¶ 11). Plaintiff took Family and Medical Leave Act leave, and returned to work with a psychiatrist's letter stating that it would be "very beneficial" to plaintiff's recovery from PTSD

---

[2] Pursuant to Local Rule 56.1(a)(2), the court cites to paragraphs in the parties' statements of facts, or portions of such paragraphs, where not "specifically controverted by a correspondingly numbered paragraph in the opposing statement." Because plaintiff's statement of material fact reproduces defendant's numbered statements of fact in full and then provides plaintiff's responses, the court cites to plaintiff's statement throughout this order for references to both sides' assertions. In some of these citations, plaintiff disputes part, but not all, of defendant's asserted facts; in such cases, citations are to the undisputed portions only.

2

if plaintiff could work in another department away from mail processing machinery. (See id.). Plaintiff reached out to various figures at the plant to request a "detail," or temporary assignment, as an Acting Supervisor, Customer Service ("SCS"). (See id. ¶¶ 6, 12). After internal discussion, this request was approved, and plaintiff began a detail at Tokay Station, another USPS branch in Fayetteville, as an Acting SCS. (See id. ¶¶ 12–14). Plaintiff intended to apply for a permanent position with customer service. (Id. ¶ 14). Plaintiff applied for customer service positions during his time as an Acting SCS eight times, but was never selected. (Id. ¶ 50).

Angeline Rainey became acting plant manager of the Fayetteville plant May 25, 2019. (Id. ¶ 17). Both plant facilities processed mail 24 hours per day; the plant manager is responsible for these two facilities' operations on all 3 shifts. (Id. ¶ 18). Under the plant's managerial hierarchy, supervisors reported to managers, who reported to Rainey as acting plant manager. (Id.). In 2019, the plant suffered from "an extreme managerial shortage"; it had no manager of distribution operations ("MDO") and only three supervisors, one per shift. (Id.). The plant should have had one MDO and eight supervisors. (Id. ¶ 20). Rainey was therefore forced to cover the MDO vacancy and her supervisors' days off, so that her average workday was 16-17 hours per day, seven days per week. (Id. ¶ 18). This pressure caused Rainey to go from a dress size ten to a size four in five months. (Id.).

On an unspecified date in September 2019, Rainey sent an email request to her boss, requesting that all EAS personnel assigned to the Fayetteville plant return to their positions immediately due to a staffing shortage, "namely a shortage of supervisors" and the team covering those shortages "being burnt out." (Id. ¶ 20). Such shortage was "extreme," so the plant was "having a hard time" going into its "peak season" in the fall and around Christmas. (Id.).

3

The parties dispute the details of Rainey's knowledge of plaintiff's PTSD, but agree that she had such knowledge no later than September 16, 2019. (See id. ¶ 22). Plaintiff's supervisor at Tokay Station spoke with plaintiff about Rainey's request that plaintiff return to his official position at the plant. (See id. ¶¶ 19, 23). Plaintiff informed his supervisor that this position had triggered his PTSD, and gave her a copy of his psychiatrist letter. (Id. ¶ 23). Plaintiff told his supervisor that "they let him come to work in customer service because of his PTSD," and that "it was something [Rainey's predecessor as plant manager] had let him do." (Id. ¶ 24).

Plaintiff's supervisor told plaintiff that because his official position was in the Fayetteville plant, she could not stop Rainey from requesting plaintiff's return. (Id. ¶ 25). Plaintiff was informed September 23, 2019, that his detail as an Acting SCS would terminate at the end of that month, at which point plaintiff would return to mail processing. (Id. ¶ 28). Plaintiff was instructed to return to work at the Fayetteville plant, but refused and, after exhausting paid leave, went on unpaid leave. (Id. ¶ 30). Rainey personally covered plaintiff's responsibilities until October 25, 2019, when she departed for a different USPS facility. (Id. ¶ 32).

After Rainey requested that EAS personnel return to the Fayetteville plant, no other supervisors so returned. (See id. ¶ 33). One supervisor could not be recalled due to extended medical leave, another retired rather than return, and only two non-managerial personnel volunteered to work at the plant. (Id.).

Plaintiff emailed the District Reasonable Accommodation Committee ("DRAC") October 9, 2019, with an attached letter from his psychiatrist dated October 8, 2019, stating the doctor's concern about plaintiff working around equipment that triggered his PTSD. (Id. ¶ 37). Two days later, the chairperson of DRAC confirmed receipt of plaintiff's request for a reasonable accommodation; the same day, DRAC requested a precise request for accommodation and medical

documentation. (Id. ¶¶ 38–39). DRAC received these forms October 30, 2019; plaintiff's precise requested accommodation was placement in an SCS position. (Id. ¶ 42). Plaintiff applied for two SCS positions November 4, 2019, for which he was not selected. (Id. ¶ 43).

The DRAC met with plaintiff December 4, 2019. (Id. ¶ 45). Defendant contends that DRAC offered plaintiff an accommodation at this meeting, which he refused, while plaintiff directly disputes that any accommodation was offered at the meeting. (See id.). Plaintiff and DRAC interacted through December 2019 and January 2020; DRAC stated that it would look for an "alternative accommodation," and plaintiff updated his medical documentation and expressed frustration with delays. (See id. ¶¶ 47, 49–50).

Plaintiff applied for disability retirement January 22, 2020, which application the office of personnel management approved effective April 13, 2021. (Id. ¶¶ 51, 62).

DRAC ultimately offered plaintiff a position as Request for Information Coordinator for the Fayetteville plant ("RFIC") March 9, 2020. (Id. ¶ 54). Plaintiff accepted this position, and returned to work March 30, 2020. (Id. ¶ 60).

## COURT'S DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

5

Case 5:23-cv-00042-FL   Document 50   Filed 03/26/24   Page 5 of 14

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable

6

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

Plaintiff's claim involves three theories: the retraction of his detail as an acting SCS, defendant's refusal to offer him one of several open positions plaintiff requested after the retraction, and defendant's delay in providing a new accommodation. (See Pl's Br. (DE 42) 9–11). Defendant argues that undue hardship defeats plaintiff's claim as it stands on the retraction of his detail, that plaintiff was not entitled to his top choice in accommodation after that retraction, and that any delay here was not unreasonable. The court agrees with defendant on all three points.

1.  Retraction of Detail Accommodation

To establish a prima facie case on his failure to accommodate claim, plaintiff must show that 1) he qualifies as an individual with a disability, as defined in 29 U.S.C. § 705(20); 2) defendant knew of the disability; 3) plaintiff could perform the essential functions of his job with a reasonable accommodation; and 4) the employer refused to make a reasonable accommodation. Reyazuddin v. Montgomery Cnty., Md., 789 F.3d 407, 414 (4th Cir. 2015).[3]

As part of analysis into the reasonable accommodation element, or as a freestanding defense, or both, a defendant can avert liability by demonstrating that a proposed accommodation will cause "undue hardship" under the circumstances. See id. To evaluate whether a proposed accommodation poses undue hardship, the court considers, as a non-exhaustive list of factors: 1) the nature and cost of the accommodation; 2) the overall financial resources of the facility, the number of persons employed at there, the effects on expenses and resources, and the other impact

---

[3] Rehabilitation Act suits incorporate the substantive law and doctrines of the Americans with Disabilities Act ("ADA"). See Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001). The court therefore draws upon ADA authority in its analysis.

7

of such accommodation on operations; 3) overall financial resources of the employer and the number, type, and location of its facilities; and 4) the employer's operations, including its workforce's composition, structure, and functions. Id.; 42 U.S.C. § 12111(10)(B).

An accommodation can be unreasonable or can pose an undue hardship through its impact on other employees, such as by forcing them to work harder or longer, or by causing dismissals or relocations. See US Airways, Inc. v. Barnett, 535 U.S. 391, 400–01 (2002); Elledge v. Lowe's Home Ctrs., LLC, 979 F.3d 1004, 1013 (4th Cir. 2020); Shin v. Univ. of Md. Med. Sys. Corp., 369 F. App'x 472, 482 (4th Cir. 2010); see also, e.g., 29 C.F.R. § 1630.2(p)(2)(v) (listing impact on other employees as a factor in determining undue hardship); Rehrs v. Iams Co., 486 F.3d 353, 357 (8th Cir. 2007) (rejecting proposed schedule that would have disrupted all other employees' schedules); Milton v. Scrivner, Inc., 53 F.3d 1118, 1124–25 (10th Cir. 1995) (rejecting light duty at expense of other employees); Crabill v. Charlotte-Mecklenburg Bd. of Educ., 708 F. Supp. 2d 542, 556 (W.D.N.C. 2010) (rejecting outright transfer of job duties to other employees), rev'd on other grounds, 423 F. App'x 314 (4th Cir. 2011); Dicksey v. New Hanover Cnty. Sheriff's Dep't, 522 F. Supp. 2d 742, 749 (E.D.N.C. 2007) (rejecting moving portions of plaintiff's shifts onto other employees).

Defendant produces evidence that the Fayetteville plant suffered from an "extreme" staff shortage which caused extraordinary stress upon Rainey and the other remaining staff members. (Pl's SMF ¶ 18). Understaffing at the plant caused Rainey to work 16-17 hours per day seven days per week, and resulting stress caused her to drop several dress sizes in five months. Plaintiff challenges none of this evidence. (See id.). Defendant therefore presents unrebutted evidence that continuing the particular accommodation it granted, with plaintiff remaining as an Acting SCS, began to impose undue hardship by exacerbating a critical staff shortage and forcing other

8

employees to work extreme schedules. Accordingly, continuing plaintiff's detail was not a reasonable accommodation for purposes of the prima facie case and it presented undue hardship precluding defendant's liability.

Plaintiff attempts to counter this conclusion in two ways. The court finds neither argument persuasive.

First, plaintiff argues against undue hardship by citing Bilinsky v. Am. Airlines, Inc., 928 F.3d 565, 573 (7th Cir. 2019), which stated that "absent some change in circumstance, an employee may not rescind an accommodation simply because it is inconvenient or burdensome." (Pl's Br. 8). The court first observes that this Seventh Circuit case does not control here. But Bilinsky does not support plaintiff as suggested, because plaintiff ignores the first part of the sentence he quotes: "absent some change in circumstance[.]" Bilinsky, 928 F.3d at 573. The "extreme" staff shortage that arose in Autumn 2019 certainly constituted a "change in circumstance," and so the court does not view Bilinsky as truly conflicting with the many cases cited above. Moreover, Bilinsky recognizes that an employer cannot rescind an accommodation on a whim, but plaintiff is incorrect that an accommodation, once given, can never be retracted or modified. See, e.g., Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954, 961 (4th Cir. 2021). To hold as plaintiff suggests would frustrate the purposes of the ADA in two ways: by punishing employers for generosity and flexibility by preventing any modification of an accommodation, thereby discouraging employers from such flexibility; and by effectively abolishing in part the undue hardship defense by holding that a provided accommodation cannot be altered even if it creates such hardship later. See id. (discussing this reasoning, and collecting other cases that did so). This reading cannot be reconciled with the purposes or texts of the ADA and Rehabilitation Act. See, e.g., id.; Myers v. Hose, 50 F.3d 278, 284 (4th Cir. 1995).

9

Second, plaintiff argues that no undue hardship necessitated plaintiff's return to the Fayetteville Plant because defendant knew plaintiff could not perform any work there, meaning his transfer could not have alleviated the issue. (See Pl's Br. 11–12). But plaintiff does not dispute that defendant determined he could not perform his official role at all only "based on" the December 4 meeting with the DRAC, well after defendant ordered plaintiff's return. (See Pl's SMF ¶ 49). Further, plaintiff does not dispute that he could work on the plant's second floor, away from mail processing machines. (See id. ¶ 54). Viewing the evidence to favor plaintiff under the summary judgment standard, perhaps defendant knew plaintiff would not be a model or totally effective employee at the Plant at the time of his recall. But even through this lens the evidence does not show that defendant knew plaintiff could not function at the Plant at all so as to defeat defendant's undue hardship argument.

The court therefore concludes that defendant's rescission of plaintiff's detail as an Acting SCS did not violate the Rehabilitation Act as a matter of law, because continuing that accommodation was unreasonable and posed undue hardship to defendant.

2. Unpaid Leave

Plaintiff next argues that defendant's decision to place him on unpaid leave between his refusal to return to the Fayetteville plant and his assignment to an RFIC position from September 2019 to March 2020 constituted a failure to accommodate. As part of this argument, plaintiff makes two discrete sub-contentions: 1) that unpaid leave was not a reasonable accommodation under these circumstances; and 2) that plaintiff should have been assigned to one of various open positions instead of being placed on unpaid leave. The court disagrees with plaintiff on both counts.

10

The Fourth Circuit has recognized that unpaid leave can constitute a reasonable accommodation, when such leave is a temporary measure to permit an employee to recover from an injury or otherwise ready him or herself to return to work. See, e.g., Hannah v. United Parcel Serv., Inc., 72 F.4th 630, 636–37 (4th Cir. 2023); Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344–45 (4th Cir. 2013). Plaintiff, relying upon Hannah, contends unpaid leave cannot have constituted a reasonable accommodation here because his PTSD was incurable, so that defendant's actions instead placed him on a de facto permanent unpaid leave. (See Pl's Br. 11).

However, Hannah involved an "indefinite unpaid leave of absence," which that court approved as a reasonable accommodation, Hannah, 72 F.4th at 636, and the undisputed facts here show that defendant was actively engaged with plaintiff in formulating a new accommodation; plaintiff was not placed into a permanent unpaid leave limbo. (See Pl's SMF ¶¶ 37–54). Permitting plaintiff to go on unpaid leave while the parties hashed out another, more permanent accommodation is analogous to such leave as a temporary measure to permit recovery from an injury, as was approved in Hannah. Moreover, defendant did not learn that plaintiff's PTSD was untreatable until an unspecified point in December, well after plaintiff began unpaid leave. (See Pl's SMF ¶ 47). Under these circumstances, plaintiff's unpaid leave aligns with Hannah and other cases that have held such measures to be reasonable accommodations. See Hannah, 72 F.4th at 636–37 (approving unpaid leave as a temporary measure); Wilson, 717 F.3d at 344–45 (same). Such leave was therefore reasonable under these circumstances too.

Plaintiff next contends that defendant's refusal to assign him to another vacant customer service position constitutes a failure to accommodate. (Pl's Br. 8–9). The court has already concluded above that unpaid leave during the relevant period was a reasonable accommodation. And a plaintiff is entitled only to a reasonable accommodation, not to his or her top, preferred

accommodation. E.g., Reyazuddin, 789 F.3d at 415–16; Smith v. CSRA, 12 F.4th 396, 414 (4th Cir. 2021). That plaintiff preferred a different accommodation over the one provided does not support his claim, especially when that accommodation would have placed plaintiff in a role for which he was not qualified, having failed to attain such positions 10 times through defendant's merit-based selection process. (Pl's SMF ¶ 50); see Elledge, 979 F.3d at 1015–16; Pathways Psychosocial v. Town of Leonardtown, Md., 223 F. Supp. 2d 699, 717 (D. Md. 2002).

The court therefore concludes that neither placing plaintiff on unpaid leave nor declining to place him in his preferred accommodation constituted a failure to accommodate under the ADA.

3. Delay

Plaintiff's final theory on his failure to accommodate claim is that defendant unduly delayed in providing an alternative accommodation.

In some circumstances, an "unreasonable delay" may constitute a denial of an accommodation. Smith, 12 F.4th at 415.

However, three interlocking principles foreclose plaintiff's arguments. First, an employer can require that a plaintiff/employee provide current medical documentation about the employee's disability. See, e.g., Allen v. City of Raleigh, 140 F. Supp. 3d 470, 488–89 (E.D.N.C. 2015) (collecting cases from across the country). Second, a delay between request and accommodation provision should not be considered unreasonable when the request is under "active consideration." Hannah P. v. Coats, 916 F.3d 327, 338 (4th Cir. 2019). Third, a delay of a few months is not unreasonable. Smith, 12 F.4th at 415.

The timeline of events is undisputed in relevant part here. Defendant received the documents it required from plaintiff, which included medical documentation, October 30, 2019. (Pl's SMF ¶ 42). The parties met December 4, 2019, and continued to communicate through

12

December 2019 and early 2020.  (See id. ¶¶ 43–52).  Plaintiff updated his medical documentation sometime between December 12 and 31, 2019.  (See id. ¶ 47).  Finally, defendant offered plaintiff an accommodation March 9, 2020.  (Id. ¶ 54).  Thus, about four months passed between plaintiff's initial request and the accommodation offer, and only about 2-3 months passed between when plaintiff updated his medical documentation and said offer.  This delay was not unreasonable under the combined holdings of Smith and Coats, because the undisputed evidence demonstrates a delay of, at most, four months, during which time plaintiff's request was under active consideration.  See Smith, 12 F.4th at 415; Coats, 916 F.3d at 338.  Under these circumstances, the delay was not unreasonable, and plaintiff's claim cannot succeed insofar as it rests upon a constructive refusal to accommodate through delay.

   4.  Additional Discovery

  Finally, the court addresses plaintiff's request that the court deny defendant's motion on grounds of insufficient discovery.  (See Pl's Br. 12–13).  This request is unavailing, because plaintiff's requested discovery would not disturb or affect any of the conclusions reached above.  Plaintiff's requested areas of discovery primarily concern whether defendant could have offered plaintiff an accommodation in customer service, as opposed to unpaid leave or as an RFIC.  (See id.).  But the dispositive issue in this case as addressed herein is undue hardship, and the facts underlying the undue hardship on this record are undisputed; plaintiff's additional discovery would not alter the court's conclusions on this issue.  Second, plaintiff's requested discovery on potential placement in a customer service position is not relevant because, as noted above, an employee is entitled to a reasonable accommodation, not the employee's preferred accommodation.  Whether plaintiff's preferred accommodation was possible is immaterial to whether the accommodations actually offered were reasonable, as discussed above.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 16) is GRANTED. The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of March, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge